## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ) | Civil Action №: |
| ) | |
| ) | |
| **EMBV MEDIA, S. A., a French public** ) | |
| **limited company,** ) | |
| ) | |
| ) | |
| Plaintiff, ) | **COMPLAINT** |
| ) | |
| vs. ) | **Jury Trial Demanded** |
| ) | |
| **VIDEOAPP, Inc., a Nevis corporation d/b/a** ) | |
| **PPVNETWORKS and DARK ALLEY** ) | |
| **DISTRIBUTION, a Florida Limited** ) | |
| **Liability Company**, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

As and for its Complaint in this action, plaintiff, EMBV Media, S.A. ("Plaintiff" or "EMBV"), by its undersigned attorneys, alleges as follows:

### INTRODUCTION: NATURE OF PROCEEDING AND RELIEF SOUGHT

1. This action for copyright infringement (direct, contributory, and vicarious), breach of contract, violation of New York General Business Law § 349, tortious interference with prospective business advantage, and an accounting is based on Defendants' unlawful actions made in connection to and arising out of a now-terminated licensing agreement ("Licensing Agreement") between EMBV and Defendant VideoApp, Inc. d/b/a/ PPVNetworks ("PPV") under which EMBV, the producer of a line of adult-themed movies, licensed various rights in those movies to

PPV. The Licensing Agreement allowed for the simultaneous release of Plaintiff's movies on a website operated by Plaintiff, <ericvideos.com>, and a website operated by Defendant PPV, <ericraw.com>. The Parties shared the revenue from the <ericraw.com> website. Unhappy with PPV's performance, EMBV terminated the Licensing Agreement at the end of the initial term. However, apparently unwilling to accept EMBV's termination of the Licensing Agreement, Defendants continued to unlawfully copy, sell, and publicly display EMBV's copyrighted works.

2.      In addition to these acts of copyright infringement, PPV breached the Licensing Agreement by continuing to distribute Plaintiff's copyrighted works while failing to make payments due under the Licensing Agreement's revenue share provisions. Defendant PPV then caused additional damage to Plaintiff by failing to follow procedures for shutting down the <ericraw.com> website in an orderly fashion.  Specifically, PPV ignored a term that required PPV to display a page with text mutually agreeable to the Parties at the domain <ericraw.com>. Rather, in a knowing and willful attempt to cause harm to Plaintiff, Defendant took <ericraw.com> offline without notifying subscribers and without honoring prepaid subscriptions. Defendant knew this action would cause dissatisfaction and resentment among the subscribers and hinder the transfer of their subscriptions to Plaintiff's ongoing membership-based website.

3.      PPV's actions were intended to harm Plaintiff and the actions resulted in harm to consumers in violation of New York General Business Law § 349. PPV's actions also form the basis of a claim for trademark infringement and tortious interference with prospective business advantage. Plaintiff is also entitled to recover its damages sustained as a result of Defendants' unlawful activity and to temporarily, preliminarily, and permanently enjoin any further unlawful activity.

4.      Accordingly, Plaintiff brings this action against Defendant PPV and Defendant Dark Alley Distribution, LLC ("Dark Alley") pursuant to 17 U.S.C. § 501 *et seq.* and New York common law to enjoin the transactions, acts, practices, and courses of business alleged in this Complaint and to seek orders of disgorgement, damages, prejudgment interest, injunction, exemplary damages, attorneys' fees and costs, and such further relief as the Court may deem appropriate.

## THE PARTIES

5.      Plaintiff EMBV Media, S.A. is a French public limited company that produces adult videos under the registered trademarks ERICVIDEOS® and ERICVIDEOS.COM® pursuant to a license granted to it by its principal, Michael Eric Bennouchene ("Bennouchene").

6.      Defendant VideoApp, Inc. is a Nervis corporation that resides in and does business in New York as PPVNetworks.

7.      Defendant Dark Alley Distribution is a Florida limited liability company that engaged in business with PPV in New York.

## JURISDICTION AND VENUE

8.      This action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*; the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*; New York General Business Law, N.Y. Gen. Bus. Law §§ 349; and the common law of the State of New York.

9.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121; 28 U.S.C. §§ 1331 and 1338(a). The Court has supplemental jurisdiction to hear Plaintiff's state law claims against Defendant PPV pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendant PPV because Defendant PPV resides in this District and solicits, transacts, and is doing business within the jurisdiction. PPV

has committed unlawful and intentional tortuous acts within the jurisdiction. As such, PPV has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction.

11.    The Licensing Agreement provides that it "shall be enforced in accordance with the laws in New York, USA."

12.    Defendant Dark Alley does business within this jurisdiction. Plaintiff is informed and believes and based on that belief alleges that Dark Alley either hired PPV or partnered with PPV in New York to make EMBV's copyright and trademark protected works available for public viewing at <vod.darkalley.com>. Further, Dark Alley entered into a written agreement with New York based Defendant PPV to distribute DVDs of Plaintiff's copyright protected works.

13.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 28 U.S.C. §1400(a).

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

14.    EMBV Media has created adult content and operated an adult website at ericvideos.com since it was formed in 2010.

15.    Plaintiff holds an exclusive license in all of the audiovisual works identified in **Exhibit A** to this Complaint ("Plaintiff's Works").

16.    Each of the audiovisual works identified in **Exhibit A** and at issue in this action was first published in France.

17.    France is a member of the Berne Convention for the Protection of Literary and Artistic Works.

18.    France has no formal copyright registration system.

19.     Michel Eric Bennouchene, the exclusive owner of the U.S. federally registered trademark ERICVIDEOS®, registration number 5,993,988, has heretofore granted an exclusive license of the mark to Plaintiff EMBV.

20.     Michel Eric Bennouchene, the exclusive owner of the U.S. federally registered trademark stylized ERICVIDEOS.COM®, registration number 5,999,959, has heretofore granted an exclusive license of the mark to Plaintiff EMBV.



21.     On March 1, 2017, EMBV Media entered into the Licensing Agreement with PPV.

22.     Under the terms of the Licensing Agreement, EMBV granted PPV "a license allowing it to use and the right to use and incorporate [EMBV] Content into [PPV] Sites."

23.     The Licensing Agreement defines "Sites" as "membership websites operated by PPV using proprietary technology owned by PPVNetworks, using Domain Names jointly owned by PPVNetworks and [EMBV] until termination of [the] agreement, promoting Content owned by [EMBV] but licensed […] by PPVNetworks for use on the Sites."

24.     Under the terms of the Licensing Agreement, the domain name <ericraw.com> was used by PPV in association with the sale of EMBV content and the domain name registration <ericraw.com> was to be held jointly by the two parties and transferred to EMBV after the termination of the Agreement subject to a 12-month Tail Period.

25.     The Licensing Agreement also permitted PPV to distribute Plaintiff's Works to video-on-demand (VOD) providers during the term of the Agreement, with a percentage of the revenue earned going to EMBV.

26.     The Licensing Agreement also allowed PPV to distribute physical and digital DVDs internationally during the term of the agreement through a named distributor, Dark Alley,.

27.     The Licensing Agreement was exclusive to PPV with the exception that EMBV could continue to sell access to all EMBV content by and through the website <ericvideos.com>, which is solely owned and operated by EMBV.

28.     The term of the Licensing Agreement was twenty-four months beginning on March 1, 2017, "renewable annually, automatically at its anniversary date, unless one of the parties notifie[d] the other in writing, of its intention not to renew, at least three (3) months before the end of the initial term or at least three (3) months before the end of any renewal period thereafter."

29.     To conform with the requirements of the Licensing Agreement, when EMBV produced new movies, Plaintiff would add the movies to the website EMBV operated, <ericvideos.com>, and then place the new movies in a Dropbox folder where PPV could retrieve the movies and add them to the <ericraw.com> website and further distribute them through VOD companies and Dark Alley.

30.     At the time the Licensing Agreement was made, PPV's principal, Damian Todaro ("Todaro"), represented to EMBV, through Bennouchene, that the website being created would be extremely profitable.  However, despite PPV's promises, PPV was never able to generate the anticipated level of profits.

31.     In November 2017, disappointed with PPV's performance and frustrated that PPV was not following the reporting requirements set forth in the Licensing Agreement, Bennouchene, sent an e-mail to Todaro setting forth his concerns. Bennouchene wrote, "[b]efore I send you the latest videos I would like to understand a few things." He then explained his concerns and

requested an explanation as to why the figures in the real-time reporting did not change on a daily basis.

32.    In response, Todaro wrote, "You are in breach of our contract. You cannot change the rules as you see fit. That is counterproductive to the success of this partnership. *I have instructed the content team to get the content by any means necessary.*" (*Emphasis added.*) Plaintiff is informed and believes and based thereon alleges that PPV hacked into <ericvideos.com>, obtained two new videos and uploaded them to <ericraw.com>.

33.    At that time, although unhappy with PPV's performance and Todaro's attitude, Bennouchene believed there was little he could do but to wait until the end of the Agreement.

34.     Todaro made no attempt to remain compliant with the terms of the Licensing Agreement and PPV failed to make any timely payments to EMBV.

35.    In addition, on multiple occasions, PPV used Bonnouchene's name or photographs or still frames of his face to promote PPV websites and/or EMBV movies, despite a verbal agreement and Bennouchene's repeated requests that PPV refrain from doing so.  When confronted, Todaro feigned ignorance; in bad faith, deflected Mr. Bennouchene's complaints, asserting (in words or substance) that it was "no big deal" and that Bennouchene was "overreacting"; and failed and refused to cease this objectionable conduct.

36.    Having no desire to remain in business with PPV, on November 28, 2018, by written notice through counsel, EMBV notified PPV that it was terminating the Licensing Agreement.  Thus, the Licensing Agreement terminated on February 28, 2019 in accordance with its terms.

37.    In April 2019, Plaintiff discovered that the Adult Entertainment Broadcast Network ("AEBN"), was using Bennouchene's full legal name in association with one of EMBV's movies.

Because there is a history of fans and detractors stalking and doxing people who work in the adult film industry, Bennouchene, like many individuals working in the adult entertainment industry, does not use his full name. Accordingly, Plaintiff's counsel wrote to AEBN asking that Bennouchene's name be removed from the website. Counsel also explained that PPV was no longer authorized to distribute EMBV content and asked if AEBN might be interested in entering an agreement directly with EMBV.

38.     Upon learning of this communication with AEBN, Todaro emailed Bennouchene, stating "eric, you're a fucking shady mother fucker. i don't know what games you are playing, but you are fucking with the wrong person. you want to lie and fuck with my business and reputation, you just watch what happens."

39.     Under the terms of the Agreement, PPV is permitted to continue to use content provided by EMBV during the term of the Agreement on the <ericraw.com> site for twelve (12) months ("Tail Period").

40.     The Agreement *does not* permit PPV to use any works during the Tail Period if the work was not provided during the term of the Agreement. Thus, PPV violated Plaintiff's copyright when it hacked Plaintiff's website to gain access to one of Plaintiff's current movies and added it to the <ericraw.com> website after the termination of the Agreement.

41.     The Agreement did not permit PPV to continue any sublicensing or to continue distributing physical DVDs after the termination date. In other words, the Tail Period only applied to the use of Plaintiff's Works on <ericraw.com>. Thus, PPV infringed on Plaintiff's copyrights by continuing to distribute Plaintiff's Works online and through physical DVD distribution after the termination of the Licensing Agreement.

42.    On April 15, 2019, Plaintiff's counsel wrote to PPV warning that its continued distribution of EMBV content was a violation of the Agreement. Over the next several months Plaintiff's counsel wrote multiple letters to PPV requesting that it cease its infringing and unlawful behavior and that PPV make past due payments, however, PPV continued to distribute EMBV content while refusing to make any payments. During this time, Defendant PPV without permission downloaded new content from the <ericvideos.com> website and without authorization published the content by and through the <ericraw.com> website, despite the termination of the Agreement.

43.    It was clear that Defendant was not going to comply with Plaintiff's requests for payment or demands to cease distributing content. Thus, on July 8, 2019, Plaintiff filed suit in this Court.

44.    On July 12, 2019, Todaro vowed to engage in bad faith litigation tactics and made the following threat, "[you can proceed with the lawsuit that your 'genius' lawyer has initiated in the Southern District of New York. I have one of the best IP attorneys in NYC. If you pursue this strategy, you will not reclaim legal fees and you will lose a lot of money. *We will reign terror on you like you have never seen before. You will be dragged to NYC for endless depositions and court proceedings. We will go for the jugular with (legitimate) counter lawsuits. Things will get ugly really fast.*" (*emphasis added*).

45.    PPV wrongfully retaliated in bad faith against Plaintiff for asserting its rights, by cutting off Plaintiff's access to real-time reporting and steadfastly denied and continues to deny EMBV's repeated requests for documentation of the amounts due under the Agreement. Similarly, PPV has refused and continues to wrongfully refuse, in bad faith, to provide EMBV

with copies of distribution agreements with video-on-demand (VOD) websites and DVD manufactures and distributors.

46.    Nonetheless, the filing of the lawsuit seemed at the time to have the desired effect and through counsel the Parties entered settlement negotiations. Having prompted Defendant to come to the negotiating table and desiring to avoid additional litigation expense on the part of both Parties, Plaintiff voluntarily dismissed the action without prejudice. This was a mistake. Settlement negotiations immediately broke down. Nonetheless, Plaintiff hoped to avoid re-filing and continued to try to engage in settlement negotiations.

47.    However, Defendant continues to engage in further unlawful acts as described herein. These unlawful acts now require immediate remedial action.

48.    Even if the Agreement were interpreted to allow PPV to continue distributing EMBV content during the Tail Period, it certainly did not allow these activities after the end of the Tail Period on February 29, 2020. Nonetheless, since March 1, 2020, Defendant PPV has allowed sublicensees to continue to copy, sell, and publicly display EMBV's copyright protected works. The activity constitutes ongoing copyright infringement, trademark infringement, unlawful business practices, and tortious interference with prospective business advantage.

49.    The Agreement includes the following provision: "If this Agreement is terminated: Producer will discontinue providing new Content for the Sites; PPVNetworks is permitted, but not required, to continue the use of the Sites and maintain the Sites for twelve (12) months; if PPVNetworks choses to take down the site, a page which [sic] text mutually agreeable to Producer and PPVNetworks will be displayed; PPVNetworks will transfer complete ownership of domain names to Producer, at such request, twelve (12) months after termination or 36 months after

(10)

contract signing., or until balance of prepaid revenue share is paid off, whichever is later. PPVNetworks will not use domain names for any other purposes other than discussed herein;"

50.    On or about January 21st or 22nd 2020, Defendant PPV took the <ericraw.com> website offline without displaying the required page with text mutually agreeable to the Parties. For over a week, Defendant ignored Plaintiff's multiple emails explaining that its actions were causing irreputable harm and demanding compliance. Finally, on January 30, 2020, after numerous demands, PPV finally put up a page directing users to Plaintiff's website.

51.    The compensatory damages sought in this suit will be insufficient to fully remediate that injury caused by Defendants, as hereinafter alleged, and, unless enjoined and restrained, will continue to cause injury and damage to Plaintiff's business and reputation. Accordingly, Plaintiff has no adequate remedy at law.

## FIRST CLAIM
## COPYRIGHT INFRINGEMENT OF "BASTIAN SE FAIT REMPLIR PAR 2 LASCAR" ON ERICRAW.COM
### (against Defendant PPV)

52.    Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

53.    On November 28, 2019, Plaintiff informed Defendant through counsel and in writing that it was terminating the Agreement.

54.    Plaintiff holds the exclusive ownership of the copyrights in the movie "Bastian Se Fait Remplir par 2 Lascar" ("the Copyrighted Work").

55.    Plaintiff published the Copyrighted Work to the <ericvideos.com> website on April 9, 2019.

56.     The same day Plaintiff published the Copyrighted Work, Plaintiff registered the Copyrighted Work with United States Copyright Office. The Copyright Office assigned the Work the registration number PA-002181432.

57.     Since Plaintiff had terminated the Agreement effective February 27, 2019, Plaintiff did not provide a copy of the Copyrighted Work to Defendant PPV.

58.     On April 12, 2019, Todaro wrote to Bennouchene, "is there a reason you haven't sent the latest 4 videos?" Bennouchene responded, "Yes, because we don't have a contract running right now since end of February, we need a new agreement before to keep going, correct?"  Todaro wrote back, "LOL, no, we should be operating as if we had the previous contract in place. You're going to make much less money without new scenes and it impact[s] the credibility of the site, members demand refunds, etc. Think about it... does the fact that we dont have a contract mean i dont do DVDs? don't run the site? dont pay you? of course not... its business as usual."

59.     In an April 15, 2019 letter, Plaintiff responded through counsel reminding Mr. Todaro that the Agreement was terminated, that PPV was only permitted to publish previously provided works on <ericraw.com>, and that no distribution was permitted during the Tail Period. In a separate e-mail Plaintiff's counsel addressed the threat that that Todaro made as described in Paragraph 26 above, requesting that he cease any further communication with the client. On April 15, 2019, Todaro responded, "threatening? you havent seen anything yet. call aebn now or you won't receive a penny, ever again." In a separate e-mail that same day he wrote, "for the record, i dont trust a word that comes out of your mouth. you are a shady piece of shit."

60.     In a separate April 15, 2019 e-mail, Todaro wrote to Bennouchene, "meanwhile i have no new content. you are intentionally sabotaging ericraw.com."

61.     When again asked by counsel not to further contact Bennouchene, Todaro responded, "did you or did you not contact AEBN? you don't need 'time' to answer that... its a yes or no question. and i don't take orders from you. so shut the fuck up and answer me now."

62.     Mr. Todaro also refused counsel's request to stop harassing Bennouchene and in the wake of the tragic fire at Notre Dame sent Bennouchene (a resident of Paris) the following



text:

63.     The emails sent by Todaro clearly demonstrate that a) he did not have access to EMBV's new content, b) he understood the Agreement had been terminated, and c) he was irrationally angry with Plaintiff.

64.    On April 20, 2019, Plaintiff discovered that Defendant PPV had willfully and defiantly published "Bastian Se Fait Remplir par 2 Lascar" on the <ericraw.com> website.

65.    The only way Defendant could have obtained a copy of the Copyrighted Work, would have been by hacking into <ericvideos.com>.

66.    Defendant's actions constitute statutory copyright infringement pursuant to 17 U.S.C. § 501.

67.    Defendant's unlawful copying, sale, and public display of the Copyrighted Work was willful.

68.    Despite repeated requests, Defendant has refused to provide any documentation necessary to determine the extent of the illicit profits Defendant earned through its willful infringement of the Copyrighted Work.

69.    Plaintiff suffered damage as a result of Defendant PPV's willful violation of Plaintiff's copyright in an amount that can only be determined through discovery and a trial on the merits.

## SECOND CLAIM
## DIRECT, VICARIOUS, AND CONTRIBUTORY COPYRIGHT INFRINGEMENT OF VARIOUS WORKS ON <rawfuckclub.com> – 17 U.S.C. §501
## (against Defendant PPV)

70.    Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

71.    Plaintiff holds an exclusive license in the works identified in **Exhibit A** to this Complaint.

72.    A portion of the Works identified in **Exhibit A** are currently available for public display by and through the websites as indicated.

73.    Defendant PPV operates <rawfuckclub.com> as a form of VOD site where adult content producers can publish their content. PPV charges a subscription fee to customers and shares a percentage of that fee with the content owners.

74.    Plaintiff is informed and believes and based thereon alleges that pursuant to the Licensing Agreement, PPV copied a number of the works identified in **Exhibit A**, to <rawfuckclub.com>.

75.    Plaintiff is informed and believes and based thereon alleges that to facilitate the copying, sale, and public display of EMBV works by and through <rawfuckclub.com> PPV set up and maintains the Eric Videos Studio on <rawfuckclub.com>.

76.    On November 28, 2018, Plaintiff terminated the Agreement effective February 28, 2019.

77.    The Agreement did not allow PPV to continue using Plaintiff's Works on <rawfuckclub.com> after February 28, 2019.

78.    On April 15, 2019, Plaintiff's counsel wrote to PPV and demanded that PPV cease use of Plaintiff's Works at any other location other than <ericraw.com>. PPV ignored the demand and continues to ignore the demand.

79.    PVV continues to sell and public display Plaintiff's Works by and through <rawfuckclub.com>.

80.    Plaintiff was harmed by PPV's willful acts of infringement.

81.    Defendant PPV's maintenance of the Eric Videos Studios on <rawfuckclub.com> since March 1, 2020 constitutes copyright infringement.

**THIRD CLAIM**
**DIRECT, VICARIOUS, AND CONTRIBUTORY COPYRIGHT INFRINGEMENT OF**
**VARIOUS WORKS ON <pornhub.com>, and <aebn.com>, and <vod.darkalley.com>**
**17 U.S.C. §501**
**(against Defendant PPV)**

82.     Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

83.     Plaintiff holds an exclusive license in the works identified in **Exhibit A** to this Complaint.

84.     A portion of Plaintiff's Works identified in **Exhibit A** are currently available for public display by and through the websites <pornhub.com>, <aebn.com>, and <vod.darkalley.com>.

85.     Under the rights granted to it in the Licensing Agreement, then in effect, PPV copied each of the above identified works to the websites <pornhub.com>, <aebn.com>, and <vod.darkalley.com>.

86.     To facilitate the copying, sale, and public display of EMBV works by and through <pornhub.com>, <aebn.com>, and <vod.darkalley.com > PPV set up and maintained Eric Raw "channels" or "studios."

87.     On November 28, 2018, Plaintiff terminated the Licensing Agreement effective February 28, 2019.

88.     The Licensing Agreement did not allow PPV to continue distribute Plaintiff's works to <pornhub.com>, <aebn.com>, or <vod.darkalley.com> after February 28, 2019.

89.     On April 15, 2019, Plaintiff's counsel wrote to PPV and demanded that PPV contact any organizations it distributed EMBV content to and inform them that PPV was no longer

authorized to distribute the content including DVD distribution, VOD arrangements, and any channels on tube sites. PPV ignored and continues to ignore this demand.

90.    PPV continues to permit the public display of each of the works by and through <pornhub.com>, <aebn.com>, and <vod.darkalley.com>.

91.    PPV alone decides what material to maintain in the Eric Raw channels/studios on <pornhub.com>, <aebn.com>, and <vod.darkalley.com>. Thus, PPV has the right and ability to control the content sold and publicly displayed through the Eric Raw Channel on <pornhub.com>, <aebn.com>, and <vod.darkalley.com>.

92.    Plaintiff is informed and believes and based thereon alleges that Pornhub, AEBN, and Dark Alley make payments to PPV based on the number of times users view the content PPV maintains in the Eric Raw channels/studios on <pornhub.com>, <aebn.com>, and <vod.darkalley.com>. Thus, PPV derived direct financial and commercial benefits from the infringement of EMBV works by and through the Eric Raw channels/studios that PPV maintained on <pornhub.com>, <aebn.com>, and <vod.darkalley.com>.

93.    PPV uploaded the EMBV works to the Eric Raw channels/studios it maintains on <pornhub.com>, <aebn.com>, and <vod.darkalley.com>. Thus, PPV had direct knowledge of the infringement of EMBV works by and through the PPV maintained Eric Raw channel/studios on <pornhub.com>, <aebn.com>, and <vod.darkalley.com>.

94.    PPV uploaded the EMBV works to the Eric Raw channel/studios it maintains on <pornhub.com>, <aebn.com>, and <vod.darkalley.com>. PPV failed to remove the EMBV materials from <pornhub.com>, <aebn.com>, and <vod.darkalley.com> upon the termination of the Agreement. Thus, PPV materially contributed to the infringement of EMBV works by and

through the PPV maintained Eric Raw Channel on <pornhub.com>, <aebn.com>, and <vod.darkalley.com>.

95.    Plaintiff was harmed by PPV's willful acts of infringement on <pornhub.com>, <aebn.com>, and <vod.darkalley.com>.

96.    Plaintiff's maintenance of the Eric Raw channel/studios, which publicly displays Plaintiff's copyright protected works, since March 1, 2020, constitutes direct, vicarious, and contributory copyright infringement.

**FOURTH CLAIM**
**DIRECT, VICARIOUS, AND CONTRIBUTORY COPYRIGHT INFRINGEMENT OF**
**VARIOUS WORKS VIA SALE OF DVDS**
**17 U.S.C. §501**
**(against Defendants PPV and Dark Alley)**

97.    Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

98.    Pursuant to the Licensing Agreement, PPV entered an agreement with Dark Alley to distribute DVDs of Plaintiff's works.

99.    PPV never provided a copy of the Dark Alley Distribution Agreement to EMBV despite repeated requests.

100.    On November 28, 2018, Plaintiff terminated the Licensing Agreement with PPV effective February 28, 2019.

101.    The Agreement with PPV did not allow PPV to continue distributing Plaintiff's works to Dark Alley for DVD distribution after February 28, 2019.

102.    On April 15, 2019, Plaintiff's counsel wrote to PPV and demanded that PPV contact any organizations it distributed EMBV content to and inform them that PPV was no longer

authorized to distribute the content including DVD distribution, VOD arrangements, and any channels on tube sites. PPV ignored and continues to ignore this demand.

103.    Dark Alley continues to sell physical DVDs of Plaintiff's works through its website <darkalleydvd.com>. Dark Alley also continues to sell Plaintiff's DVD's wholesale to other retailers.

104.    After the Agreement terminated, Dark Alley sharply reduced the price of DVDs of Plaintiff's Works in an apparent effort to unload its inventory of DVDs containing Plaintiff's Works. Unloading these DVDs at reduced prices has caused further harm to Plaintiff's reputation and the value of Plaintiff's Works.

105.    Defendants' actions constitute direct infringement of Plaintiff's copyright protected works.

**FIFTH CLAIM**
**TRADEMARK INFRINGMENT**
**(against Defendant PPV)**

106.    Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

107.    Michel Eric Bennouchene owns all right, title, and interest in and to the ERICVIDEOS® and ERICVIDEOS.COM® trademarks (the "Protected Marks").

108.    At all times relevant hereto, through the present, Plaintiff EMBV has been and is the exclusive licensee of the Protected Marks.

109.    Under the Licensing Agreement, PPV was authorized by EMBV to "promote, advertise, and market" membership websites operated by PPVNetworks.

110.    The Agreement terminated on February 28, 2019.

111.    The Agreement permitted PPV some limited rights to continue the use of PPV copyrighted materials during the 12-month Tail Period.

112.    In any event, PPV is not authorized to use the Protected Marks after February 29, 2020.

113.    On November 28, 2018, Plaintiff terminated the Licensing Agreement in writing.

114.    On April 15, 2019 Plaintiff demanded that PPV cease DVD distribution, VOD arrangements, and any channels on tube sites.

115.    Despite demand, PPV set up and maintains an Eric Raw "Channel" on <pornhub.com> and the Eric Videos "Studios" on <aebn.com> and vod.darkalley.com, and published Plaintiff's Works by and through its website <rawfuckclub.com>.

116.    Each of Plaintiff's Works identified in **EXHIBIT A**, is currently available for public display by and through the websites <pornhub.com>, <aebn.com>, <vod.darkalley.com> and/or <rawfuckclub.com>.

117.    PPV is using the mark Protected Mark "ERICRAW" both as a word mark and as a stylized mark in connection with its unauthorized copying, distribution, and public display of Plaintiff's Works (the "Accused Mark").

118.    The stylized Accused Mark PPV is using to identify Plaintiff's Works is nearly identical to Plaintiff's registered stylized mark, in that the Accused Mark merely exchanges the word "raw" for the word "videos", as set forth below:

    versus    

119.    The similarity between the two trademarks is deliberate and, upon information and belief, intended to cause confusion among consumers in the marketplace. Although use of the ERICRAW mark was allowed during the term of the Agreement it is no longer permitted.

120.    PPV is also using the Protected Marks in connection with the unauthorized public display of Plaintiff's Works

121.    Defendant PPV and/or its licensees' use and threatened continued use of the Accused Mark, along and in combination with its unlawful use of  Plaintiff's Registered Marks, is likely to cause confusion with Plaintiff's Registered Marks, to cause mistake, and to deceive as to the source, origin or sponsorship of the goods being marketed using the Accused Mark.

122.    PPV's and/or its licensees' use and threatened continued use of the Accused Mark, alone and in combination with its unlawful use of  Plaintiff's Registered Marks, is likely to cause the public wrongly to associate Plaintiff with Defendant, to believe that EMBV somehow continues to be affiliated or connected with Defendant PPV, and/or to confuse Defendant PPV with EMBV.

123.    Defendant PPV's and/or its licensees' use and threatened continued use of the Accused Mark, alone and in combination with its unlawful use of Plaintiff's Registered Marks, is likely to cause the public to wrongly associate EMBV and ERICVIDEOS® with Defendant PPV, to believe ERICVIDEOS® is somehow affiliated or connected with Defendant PPV, and/or to confuse Defendant and its goods and services with those of EMBV marketed under the ERICVIDEOS® and ERICVIDEOS.COM® marks.

124.    Defendant PPV's use and threatened continued use of the Accused Mark, alone and in combination with its unlawful use of Plaintiff's Registered Marks, has caused and threatens EMBV with irreparable injury for which it has no adequate remedy at law.

125.    Defendant PPV is liable to EMBV for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## SIXTH CLAIM
## BREACH OF CONTRACT
## (against Defendant PPV)

126.    Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

127.    PPV breached the Licensing Agreement by distributing Plaintiff's content during the Tail Period from March 1, 2019 to February 29, 2020.

128.    PPV breached the Licensing Agreement by using Plaintiff's content on <rawfuckclub.com> during the Tail Period from March 1, 2019 to February 29, 2020.

129.    PPV breached the Licensing Agreement by failing to provide EMBV Media with "real-time reports check, and audit revenues" as required under section 3.4 of the Agreement.

130.    PPV breached the Licensing Agreement by routinely failing to timely make payments through wire transfer or ACH by the 10th of month for the prior month's transactions.

131.    The timeliest payment Defendant made was 39 days late and one occasion payment was 80 days late.

132.    On June 7, 2019, through counsel, Plaintiff notified Defendant PPV that PPV continued to be in breach of the Licensing Agreement by failing to make licensing payments for the months of March, April, and May of 2019. Despite Plaintiff's demand for payment, no payment was received.

133.    Although the Licensing Agreement allowed, but did not require, PPV to continue operating <ericvideos.com> for one year after Plaintiff terminated the Licensing Agreement, if PPV elected to continue operating the website, it was obligated to continue sending 50% of the profit from the operation of the website to Plaintiff by the 10th day of the following month.

134.    PPV continued to operate <ericraw.com> through January 2020.

135.    PPV violated the Licensing Agreement by failing to make any payments to Plaintiff since the payment for revenues earned in January 2019, which was made on March 28, 2019, forty-six days after it was due.

136.    After Plaintiff terminated the Licensing Agreement, PPV wrongfully retaliated in bad faith by cutting off Plaintiff's ability to track profits through real-time reporting.

137.    Plaintiff, on numerous occasions, informally notified PPV of late payment breaches, generally via e-mail or text messages.

138.    Plaintiff is informed and believes and based thereon alleges that PPV violated the Licensing Agreement by failing to "employ digital fingerprinting technology" and by failing to "do its best to track down and seek justice from those violating copyright law by illegally distributing [EMBV] Content" as required by section 5.2 of the Agreement.

139.    Plaintiff is informed and believes and based thereon alleges that PPV violated the Licensing Agreement by failing to "issue DMCA takedown notices on well-known sites that it has relationships with and are exhibiting [EMBV] Content without permission" as required by section 5.3 of the Licensing Agreement.

140.    After Plaintiff notified PPV that it would terminate the Licensing Agreement at the end of the initial term, PPV blocked access to revenue information previously available through a shared Google Sheet document.

141.    Similarly, but more recently, PPV blocked Plaintiff's access to a Google Sheet document used to manage the available videos.

142.    PPV breached the Licensing Agreement by taking down <ericraw.com> and failing to put up a page with agreed upon text and by failing to transfer the domain name registration for ericraw.com

143.    Plaintiff has suffered damages as a result of PPV's breaches of the Licensing Agreement in an amount to be determined through discovery and upon the trial of this action.

144.    The forgoing allegations constitute breaches of the Parties' written Licensing Agreement.

**SEVENTH CLAIM**
**VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(against Defendant PPV)**

145.    Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

146.    The conduct of Defendant PPV complained of herein constitutes a breach of the covenant of good faith and fair dealing implied in every New York contract.

147.    Plaintiff has suffered damages as a result of PPV's breaches of the Licensing Agreement in an amount to be determined through discovery and upon the trial of this action.

**EIGHTH CLAIM**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW §349**
**(against Defendant PPV)**

148.    Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

149.    Under the terms of the Agreement, Defendant PPV operated the website <ericraw.com> starting March of 2017.

150.    Access to the website was available to members of the general public who were over the age of 18. To access the site, individuals had to purchase a subscription. Once a

subscription was purchased the subscriber could view all of the content on the website. The public could choose between two types of subscription.

151.    One form of subscription was a non-recurring subscription. To purchase this type of subscription, the subscriber's credit card was charged once, and the subscriber would have access for four months.

152.    The other type of subscription was a recurring subscription. For this type of subscription, the subscriber provided credit card information which PPV's payment processer retained. Every thirty days the card would be charged and the subscriber would have access for an additional thirty days. A recurring subscription would continue indefinitely until the subscriber cancelled. Cancelling was achieved through a link on the website. Plaintiff is informed and believes that there was no telephone number on the website to use for the purpose of cancelling a subscription.

153.    Defendant continued to accept new subscribers throughout the last year of its operation.

154.    In early or mid-January 2020, Defendant PPV shutdown access to the website <ericraw.com> from the general public including subscribers who had prepaid for continued access to the website.

155.    Plaintiff was contacted by multiple disgruntled <ericraw.com> subscribers who were upset because the <ericraw.com> website had disappeared and thus, there was no mechanism for the subscribers to cancel their recurring memberships.

156.    Plaintiff is informed and believes and based thereon alleges that Defendant PPV cut off access to subscribers without notification and thereby deprived subscribers of the access they had paid for.

157.    Defendant PPV's actions caused harm to the general consuming public.

158.    Defendant PPV's actions also caused specific harm to Plaintiff.

159.    The Licensing Agreement allowed for a smooth transition for subscribers from the <ericraw.com> website to the <ericvideos.com> website by providing that when PPV removed the <ericraw.com> website, it was required to place a message on the website with language agreed upon by the parties. The page would direct subscribers to the <ericvideos.com> website which provides all of the content available on the <ericraw.com> website. The page would have allowed the Plaintiff to convert former <ericraw.com> subscribers into <ericvideos.com> subscribers. Plaintiff could have, and would have, honored the ericraw.com subscriptions.

160.    Subscribers are unaware that <ericraw.com> and <ericvideos.com> are operated by two different companies. Thus, Defendant PPV's action of discontinuing the ericraw.com website and failing to provide consumers with the promised access to content, has caused and continues to cause damage to the "Eric" brand and related goodwill.

161.    Defendant PPV's unlawful acts constitute a violation of New York General Business Law §349.

162.    Defendant PPV's violation of New York General Business Law §349 was knowing and willful.

## NINTH CLAIM
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE
### (against Defendant PPV)

163.    Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs

164.    Plaintiff, through issued by Defendant PPV, provided content to Defendant's subscribers and thus had business relations with those subscribers.

165.    Defendant PPV interfered with those business relations by effectively terminating their subscriptions without explanation and without directing those subscribers to Plaintiff's website <ericvideos.com>.

166.    Defendant PPV's action of terminating prepaid subscriptions without explanation was unlawful.

167.    Defendant PPV acted with the sole purpose of harming Plaintiff as evidenced by his statement that he would "reign terror on you like you have never seen before."

168.    Plaintiff has been harmed by Defendant PPV's unlawful actions. Rather than transferring <ericraw.com> subscribers to ericvideos.com, Defendant PPV instilled mistrust and bad will in the subscribers.

169.    Defendant PPV's actions as described above represents a tortious interference with Plaintiff's prospective business advantage.

## TENTH CLAIM
## AN ACCOUNTING
### (against Defendants PPV and Dark Alley Distribution)

170.    Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

171.    Plaintiff is entitled to recover in this action (a) Plaintiff's actual damages and (b) all Defendants illicit profits attributable to the infringing acts herein described.

172.    The amount of compensatory damages due from Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without a detailed accounting by Defendant.

173.    Accordingly, Plaintiff is entitled to and hereby demands a full accounting from Defendants.

**ELEVENTH CLAIM**
**INJUNCTION**
**(against Defendants PPV and Dark Alley Distribution)**

174.    Plaintiff repeats and incorporates by this reference the allegations set forth in all previous paragraphs.

175.    Unless restrained and enjoined by this Court, the acts and omissions of Defendants complained of herein will continue, causing Plaintiff irreparable harm to its business, reputation and good will, not adequately compensable in money damages.

176.    Accordingly, Plaintiff is entitled to injunctive relief, restraining and enjoining Defendants and all those acting in concert with them, or with knowledge of the Court's decree, from reproducing, posting, selling, distributing, or making any other infringing use or infringing distribution of Plaintiff's Works and/or the Protected Marks.

177.    Plaintiff has no adequate remedy at law.

**JURY DEMAND**

178.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues properly triable by a jury in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

1)    That the Court enter a judgment against Defendant PPV finding and holding that it has willfully infringed Plaintiff's exclusively held rights to copy, sell, and distribute "Bastian Se Fait Remplir par 2 Lascar" and has otherwise injured the business reputation and business of Plaintiff by Defendant's acts and conduct set forth in this Complaint.

2)      That the Court enter a judgment against Defendant PPV finding and holding that it has willfully infringed Plaintiff's exclusively held rights to copy, sell, and distribute Plaintiff's Works on <pornhub.com>, <aebn.com>, <rawfuckclub.com>, and <vod.darkalley.com>.

3)      That the Court enter a judgment against Defendant Dark Alley finding and holding that it has infringed Plaintiff's exclusively held rights to copy, sell, and distribute Plaintiff's Works in DVD format.

4)      That the Court enter a judgment against Defendant PPV finding and holding that it has willfully breached the written Licensing Agreement between the Parties and has otherwise injured the business of Plaintiff by Defendant's acts and conduct set forth in this Complaint.

5)      That the Court issue injunctive relief against Defendants, and that Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, or with knowledge of the Court's judgment, be enjoined and restrained from reproducing, posting, selling, distributing, or making any other infringing use or infringing distribution of audiovisual works, photographs or other materials owned by, registered to, or exclusively licensed to Plaintiff;

6)      That the Court enter an order of impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of Plaintiff's audiovisual works, photographs or other materials, which are in Defendants' possession or under its control;

7)      That the Court enter an order requiring a full and complete accounting of all amounts due and owing to Plaintiff as a result of Defendants' illegal activities;

8)      That the Court order Defendants to pay Plaintiff's damages and Defendants' profits pursuant to 17 U.S.C. § 504(b) for the willful infringement of Plaintiff's copyrights;

9)    That the Court order Defendants to pay statutory damages to Plaintiff pursuant to 17 U.S.C. §504.

10)    That the Court order Defendant PPV to pay enhanced damages to Plaintiff based on the willfulness of PPV's infringing activity pursuant to 17 U.S.C. §504(c)(2).

11)    That the Court order Defendants to pay Plaintiff both the costs of this action and the reasonable attorney's fees incurred by it in prosecuting this action pursuant to 17 U.S.C. § 505;

12)    That the Court enter an order enjoining Defendant PPV's actions that violate New York General Business Law §349;

13)    That the Court order Defendant PPV to pay to Plaintiff fifty dollars or the actual damages Plaintiff suffered as a result of Defendant's violation of New York General Business Law §349;

14)    That the Court order Defendant PPV to pay Plaintiff both the costs of this action and the reasonable attorney's fees incurred by it in prosecuting this action pursuant to New York General Business Law § 349(h);

15)    That the Court order a trebling of the §349 damages based on Defendant PPV's knowing and willful violation of § 349; and

16)    That the Court grant to Plaintiff such other and additional relief as is just and proper.

Dated: June 2, 2020

Respectfully submitted,

EDWARD S. RUDOFSKY
ZANE AND RUDOFSKY
The Starrett Lehigh Building
601 West 26th Street, # 1315
New York, New York 10001
(212) 245-2222
erudofsky@zrlex.com

(30)

D. GILL SPERLEIN*
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA  94102
(415) 404-6615 X103
gill@sperleinlaw.com

*Application for admission *pro hac vice* forthcoming


Attorneys for Plaintiff